IN THE CIRCUIT COURT OF THE
FIRST JUDICIAL CIRCUIT, IN AND
FOR WALTON COUNTY, FLORIDA

**TERESA CRAWFORD,**

    **Plaintiff,**

v.

**WALTON COUNTY, FLORIDA,**

    **Defendant.**

_____/

CASE NO.: 24-CA-
FLA BAR NO.: 0739685

## COMPLAINT

Plaintiff, TERESA CRAWFORD, hereby sues Defendant, WALTON COUNTY, FLORIDA, and alleges:

### NATURE OF THE ACTION

1. This is an action brought under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes and 42 U.S.C. §2000e et seq.

2. This action involves claims which are, individually, in excess of Fifty Thousand Dollars ($50,000.00), exclusive of costs and interest.

### THE PARTIES

3. At all times pertinent hereto, Plaintiff, TERESA CRAWFORD, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to her gender.

4. At all times pertinent hereto, Defendant, WALTON COUNTY, FLORIDA, has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff, a fifty-nine-year-old female, began her employment with Defendant on or about October 16, 2020, and held the position of Commissioner Aide at the time of her wrongful termination on August 29, 2023.

7. Despite her stellar work performance during her employment with Defendant, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of her gender.

8. The disparate treatment and retaliation came at the hands of specifically but not limited to Human Resources (HR) Director Nathan Kervin, Assistant Administrator Tony Cornman, Assistant Administrator Quinn Robertson, Commissioner Trey Nick, Commissioner Mike Barker, and others including without limitation the Walton County Commissioners.

9. Plaintiff was a loyal, dedicated, and industrious employee.

10. Throughout Plaintiff's employment she was treated less favorably than co-workers outside of her protected classes, including but not limited to Administrative Assistant Jennifer Ward, an approximately thirty-five-year-old female, Administrative Coordinator Mary King, an approximately forty-year-old female, and Public Outreach Employee Rachel Jenkins, an approximately thirty-eight-year-old female, concerning pay scale and promotions.

11. Plaintiff was hired by Barker and worked as his Aide.

12. In February 2023, Barker told Plaintiff he was going to resign to accept the position of city manager. Plaintiff asked Barker if she needed to apply for other jobs. Barker told Plaintiff she did not need to apply for other jobs because Chairman of Defendant Danny Glidewell and

Commissioner Boots McCormick had worked it out for the Governor to appoint Charlie Simmons as Commissioner and Simmons had said he would keep Plaintiff because she knew what was going on in District 3.

13. On February 16, 2023, after Barker submitted his two weeks' notice to Governor Ron DeSantis, McCormick approached Plaintiff during a break in a commissioner meeting and said he did not know what Plaintiff planned but if she needed somewhere to go until she could find something else Plaintiff could work for him for 6 months. McCormick told Plaintiff he could have a second aide but only for 6 months. Plaintiff thanked McCormick and said that Glidwell had told her to stay where she was because the office needed to remain open so District 3 citizens had representation and hopefully DeSantis would appoint Simmons soon. McCormick replied, "That's true. I agree the office does need to stay open and you are the logical one to stay since you know what's going on in that district, I know I don't."

14. Kervin told Plaintiff he would approve her time and leave so she would get paid for remaining in her position. Plaintiff let Glidwell know what Kervin said and Glidwell told Plaintiff "No, I will sign your timesheet and approve leave because I work for the board as Chairman." Glidewell said he would speak to Kervin about it.

15. Plaintiff repeatedly asked Glidwell about applying for other jobs since she was working without a commissioner and Glidwell told Plaintiff she worked for the board and that "as chairman you work for me." Plaintiff believed Glidwell was her supervisor.

16. In April 2023, Plaintiff applied for appointment of District 3 Commissioner Governor DeSantis' office and was subsequently attacked by Commissioner Donna Johns at commission meetings on April 11, 2023, June 13, 2023, and July 17, 2023. During each meeting when Johns attacked Plaintiff, Glidewell defended Plaintiff. Johns told Plaintiff her position was

a waste of money because she did not have a commissioner and the phones could be forwarded to Administration. Plaintiff repeatedly asked Glidewell about applying elsewhere for positions and Glidewell told Plaintiff not to.

17. On August 17, 2023, Plaintiff attended a pre-meeting for the commissioners meeting. Glidewell approached Plaintiff and said for her to meet with him after the meeting. After the meeting, Glidewell told Plaintiff they were not sure what was going to happen but the rumor was the DeSantis was going to appoint Brad Drake, an approximately forty-year-old male, as Commissioner for District 3. Glidewell said he may want to keep Plaintiff as his aid because she knew what was going on in District 3. Plaintiff asked what the position would be and about the pay. Glidewell said Executive Assistant and that the pay should be comparable to Plaintiff's current salary. Glidewell told Plaintiff he could either hire Plaintiff to work in his office as an Executive Assistant or Plaintiff could accept the new position they were working on for her in the building department. Glidewell told Plaintiff to talk to Robertson about the specifics.

18. Plaintiff attended a Bicentennial committee meeting and after the meeting she spoke with Robertson. Plaintiff told Robertson that Glidewell told her to speak to him about a position if Drake chose not to keep her. Robertson told Plaintiff the position was in the building department. Robertson said the system had not been updated and the Building Department and Planning Department should be able to communicate without having contractors run back and forth with paper forms. Robertson told Plaintiff it would not be an overnight process and that Plaintiff should not worry because she would not have to do it alone and that he would pull people from a different department to help.

19. Plaintiff told Robertson that Building Department supervisor Billy Bearden would not like that but that she understood. Robertson said he and Bearden got along great. Plaintiff

asked Robertson what the position would pay and explained that Glidewell had said the salary would be comparable to what she was earning now. Robertson said he did not know that the pay would be determined by a pay study that was being done. Plaintiff replied, "well if these are new positions then they are not in the study so the board would have control over that."

20. On August 21, 2023, Plaintiff called Glidewell's office and spoke to Commissioner Aide Teresa Lowery to set an appointment with Glidewell. When she met with Glidewell, she told him she was concerned about her position.

21. On August 22, 2023, Plaintiff texted Kervin and asked about new positions with the Building Department being added and asked what they would pay. Kervin replied and said he did not know about any new positions being added to the Building Department but that he would speak with Robertson the next morning. Plaintiff asked Kervin to please let her know something as soon as possible.

22. Shortly thereafter, Lowery came to Plaintiff's office and asked if Robertson had told her anything more about the position. Plaintiff said "no" and Lowery asked Plaintiff what she was doing. Plaintiff said she was cleaning and packing her stuff and that she felt like Robertson had told her to get out. Lowery said, "well yeah it's not fair that no one can or will tell you what's going on." Lowery said she did not know what the problem was and that Defendant had always made positions for the aides and not cut their pay if they wanted to stay with the county and she did not understand why they were not doing that now for Plaintiff. Lowery then said "Well heck they made positions for Scott (Scott Brannon an approximately forty-five-year-old male) and Mr. Gary (Gary Mattison an approximately seventy nine-year-old male) they wrote their job descriptions and they got raises." Plaintiff said she knew but that Robertson had told her that they did not have to find a position for her. Lowery then said she knew better than that and asked about

Jason Castello in Planning who worked for Commissioner Cindy Meadows, Donna Walsingham, Joanna Collinsworth, Gary Mattison, and Scott Brannon and she said there was a bunch more. Lowery then said she was getting mad and had to go back to her office but for Plaintiff to let her know if she needed anything.

23. Plaintiff then received an email from Kervin who asked if she would be there at 4:00 p.m. because he wanted to speak with her. Plaintiff said she was leaving at 3:30 p.m. because she had not had lunch and was loading up her stuff and leaving for the day. Plaintiff tried to call Kervin but he did not answer.

24. Around 3:15 p.m., Plaintiff went to HR and asked if Kervin was there. Receptionist For HR Jessica Smith, an approximately twenty-five-year-old female, told Plaintiff Kervin was not there but she thought he was in administration.

25. Plaintiff walked to administration and met with Kervin who called Cornman and Administrative Assistant for Clerk of Court Crystal Sconiers into the meeting. During that meeting, Kervin told Plaintiff she was being moved to the Building Department as a Building Tech at $18.11 an hour. Plaintiff explained that was half of her pay and was not comparable to her current salary such as what Glidewell had told her it would be.

26. Kervin then asked Plaintiff if she was going to take the position. Plaintiff said she would take the position because she had to work and needed the benefits. Plaintiff then asked Kervin why she was not able to keep her current pay such as other aides had been able to when positions were made for them. Kervin said he was unaware of any other aides who were able to keep their salary when they changed positions. Plaintiff then asked "So you are telling me no other aides have kept their pay, had positions made for them or even received raises with their new positions?" Kervin said "Not since I've been here." Plaintiff asked how long he had been there.

Kervin said five years. Kervin then asked Plaintiff again if she was going to take the position and Plaintiff said yes. Plaintiff asked if that was all and Kervin said yes.

27. On August 24, 2023, Plaintiff emailed Kervin and told him that she had given Glidwell a leave slip the day before for Thursday and Friday and that she had doctors' appointments on Monday and Wednesday and would not work a full shift on Monday and Wednesday so she could see her doctors. Plaintiff asked Kervin to put their conversation in writing about her being moved to the Building Department to work as building tech and also for him to include that he said no positions have been made for other aids and no other aide received raises when they transferred to new positions.

28. On August 25, 2023 Kervin emailed Plaintiff and said that Plaintiff was on paid administrative leave while they looked into some actions that took place the previous week and that he would reach out to her next week to discuss it further.

29. On August 29, 2023, Plaintiff received a phone call from Smith who asked Plaintiff to meet with Cornman and HR Manager Shannon Jackson. Shortly thereafter Cronman called and said she needed to be there at noon. Plaintiff said she could not be there. Cronman told Plaintiff to hold while he walked across the street. He then said "You can't have anyone with you and if you're not here by 12:00 P.M. you're terminated!"

30. Plaintiff arrived at 11:53 a.m. and Cornman, and Barnes told Plaintiff she was under investigation. Barnes then told Plaintiff she had been accused of calling Robertson "a piece of shit", which Plaintiff said to another employee, not Robertson. Other employees, however, have cussed at each other and at supervisors and not been fired such as Billy Bearden who cussed at his supervisor, Tony Cornman. Plaintiff contends she was terminated due to gender.

31. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## GENDER DISCRIMINATION

32. Paragraphs 1 through 31 are re-alleged and incorporated herein by reference.

33. This is an action against Defendant for discrimination based upon gender.

34. Plaintiff has been the victim of discrimination on the basis of Plaintiff's gender in that Plaintiff was treated differently than similarly situated employees of Defendant who are male and has been subject to disparate and poor treatment on the basis, at least in part, of Plaintiff's gender.

35. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

36. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

37. Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

38. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a gender-based nature and in violation of the laws set forth herein.

39. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein led, at least in part, to Plaintiff's termination.

40. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender in violation of Chapter 760, Florida Statutes.

41. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)      enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)      award Plaintiff interest where appropriate; and

(g)      grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 12th day of June 2024.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF